IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GLAS-WELD SYSTEMS, INC., an
Oregon Corporation,

        Plaintiff,

   v.

MICHAEL P. BOYLE, dba SURFACE
DYNAMIX and CHRISTOPHER BOYLE,

      Defendants.

Civ. No. 6:12-cv-02273-AA

OPINION AND ORDER

---

AIKEN, Chief Judge:

    Plaintiff Glas-Weld Systems, Inc. brings patent
infringement and unfair competition claims against defendants
Michael P. Boyle, dba Surface Dynamix, and Christopher Boyle.
Specifically, plaintiff alleges infringement of its glass repair
patents, United States Patent Nos. 5,670,180 (the '180 patent)
and 6,898,372 (the '372 patent), through the sale and
manufacture of defendants' glass repair products. Plaintiff's

1 - OPINION AND ORDER

unfair competition claim arises from defendants' alleged use of plaintiff's confidential client information to sell the accused products. Plaintiff seeks permanent injunctive relief, damages, and attorney's fees.

Before the court are plaintiff's motion for default based on defendants' discovery failures and the parties' competing claim constructions of the patent-in-suit.

<u>MOTION FOR DEFAULT</u>

Plaintiff moves for default judgment against defendants based on their alleged failure to respond to discovery requests and to comply with court orders compelling discovery, including the court's most recent order of July 2, 2014. Specifically, plaintiff argues that Michael Boyle has not responded or provided sufficient responses to Interrogatories 1, 2, 6, 8-14, 16-18, and 20; and that Christopher Boyle likewise has provided insufficient responses to Interrogatories 2, 3, 6, 7 9, 10, 15, 16, 19, 20. <u>See</u> Plaintiff's Motion for Default at 4-7.[1] Plaintiff

---

[1]With respect to Michael Boyle, Interrogatories Nos. 8 and 9 request the basis for his non-infringement and invalidity assertions, respectively; Nos. 10-14 request the basis for his other affirmative defenses. Interrogatories Nos. 1, 2, 6, and 16-18 request information regarding defendants' accused products, and No. 20 requests information relating to experts.

With respect to Christopher Boyle, Interrogatories Nos. 2, 3, 6, 16, 19 and 20 request information about the accused products, No. 7 requests the basis of non-infringement, and Nos. 9, 10, and 15 request the basis of his affirmative defenses.

also contends that one or both defendants failed to produce documents referenced in their Interrogatory responses.

In response, Michael Boyle criticizes the conduct of plaintiff's counsel and contends that plaintiff has employed a "scorched-earth" tactic of discovery against defendants. Christopher Boyle maintains that he has provided all necessary information and is not inclined to provide information plaintiff does not need.

Regardless of plaintiff's "tactics," defendants' briefs fail to address the substance of plaintiff's motion and their alleged failure to comply with court orders compelling discovery. Defendants do not explain why plaintiff's discovery requests are unduly burdensome or otherwise objectionable or why their responses to specific requests are sufficient. Further, defendants do not explain why they have failed to produce information and documents regarding the sales, revenue, and customers of the accused products. Such information is relevant and properly the subject of a discovery request. Likewise, defendants do not explain why they could not provide the basis of their asserted defenses, aside from non-infringement.[2]

---

[2]Despite plaintiff's contentions to the contrary, I find that defendants have provided adequate information about the basis for their non-infringement defenses. In response to Interrogatory No. 7, requesting his basis of non-infringement, Christopher Boyle responded:

Thus, with the exception of non-infringement, I find that defendants have not provided sufficient responses to plaintiff's Interrogatories requesting the basis of defendants' asserted defenses. Further, defendants do not dispute that they have not produced documents and information relevant to the manufacture and sales of the accused products. Therefore, defendants provide inadequate justification to excuse their failures to comply with orders compelling their responses to discovery.

Plaintiff is correct that Federal Rule of Civil Procedure 37 grants this court discretion to enter default judgment against a party for failing to obey a discovery order. See Fed.

---

**Patent '180:** Claim #1; the alleged infringing product [has] no helical thread form; No mechanism for convertibility; and no plunger member. **Patent '372:** Claim #1; the alleged infringing product does not mount on a resin injection system. Claim #14; the alleged infringing product does not have a bulb which is "radially inward" of a support structure or a light bulb that is "relatively close" in diameter. Claim #20; the alleged infringing product does not have a connectable power cord or a handle configured to receive a connectable power cord.

Pl.'s Motion for Default, Ex. D at 4.

Michael Boyle adopted Christopher's response in response to the same interrogatory, No. 8, directed to him. See Pl.'s Motion for Default at 4 n.1. Plaintiff contends that these responses are incomplete and inadequate. I disagree for the most part. Granted, defendants could have provided a more detailed explanation of why their accused products do not infringe plaintiff's patents. However, I find that defendants have provided sufficient information to allow plaintiff to counter defendants' non-infringement assertions.

4 – OPINION AND ORDER

R. Civ. P. 37(b)(2)(A)(vi). Before declaring default as a discovery sanction, the court must consider and make findings as to several factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." Dreith v. Nu Image, Inc., 648 F.3d 779, 788 (9th Cir. 2011) (citations omitted). Further, to warrant dismissal or default, "the party's violations of the court's orders must be due to willfulness or bad faith." Id. Generally, dismissal or default is a harsh penalty and granted only in extreme circumstances. Id.

The first factor weighs slightly in favor of default, as defendants' discovery difficulties have unnecessarily extended resolution of this case. I find the second factor generally neutral; though the numerous discovery issues and motions filed by the parties have affected the court's ability to manage its docket and resolve this case expeditiously, I do not find this factor significant enough to weigh in favor of default. I likewise find the third factor to be neutral. I recognize that plaintiff's prosecution of its claims has been made more difficult by defendants' discovery failures. At the same time, plaintiff has filed a motion for partial summary judgment, and I find no prejudice to the ultimate resolution of plaintiff's

5 – OPINION AND ORDER

claims. The fourth factor necessarily weighs against default, and I find the policy preference for disposition on the merits particularly relevant to cases alleging patent infringement. The fifth factor likewise weighs against default, in that less drastic sanctions are available to remedy defendants' discovery failures.

Finally, I am mindful of defendants' pro se status; while their status does not excuse their discovery failures, it is a factor that arguably weighs against default under Rule 37. Accordingly, I find that the relevant factors weigh against issuance of a default judgment, particularly when the court has other means of addressing defendants' discovery failures.

Rather than entering default, defendants may not raise or rely on legal assertions or theories (aside from non-infringement) that they failed to disclose in response to plaintiff's discovery requests. Further, within thirty days, defendants are ordered to provide plaintiff with information regarding quantities, sales, customers, revenue and pricing of the accused products, including the documents supporting such information. This information is relevant to plaintiff's claims and should be readily available to defendants, given their repeated assertions that the sales of the accused products total less than $7500. See Christopher Boyle's Response to Motion to Default at 2. Failure to provide this information will result in

6 - OPINION AND ORDER

the imposition of monetary sanctions, in the form of attorney fees plaintiff has expended in moving to compel this information. Lastly, I will require defendants to supplement their discovery responses regarding non-infringement, taking into consideration the court's claim construction set forth below.

## CLAIM CONSTRUCTION

A patent confers upon its owner the right to exclude others from making, using, offering for sale, selling, or importing the patented invention throughout the United States during the term of the patent. 35 U.S.C. § 154(a)(1). Whether a patent has been infringed involves a two-step analysis. See Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc). First, the court construes the patent claim language and determines the scope of the claims without regard for the allegedly infringing product. Id.; Young Dental Mfg. Co. v. Q3 Special Prods., Inc., 112 F.3d 1137, 1141 (Fed. Cir. 1997). Second, the fact-finder determines whether the claims, as construed, cover (i.e., equate with) the accused infringing product or process. Markman, 52 F.3d at 976. In this case, the court first construes the patent claims and then will allow supplemental briefing before resolving plaintiff's pending motion for partial summary judgment.

The court may use both intrinsic and extrinsic evidence to construe a claim. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). Intrinsic evidence includes the language of the patent claim, the patent specification, and the prosecution history. Id.; Markman, 52 F.3d at 979.

Generally, claim construction begins with the ordinary meaning of the claim language. Vitronics, 90 F.3d at 1582; CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002). "Absent an express intent to impart a novel meaning, claim terms take on their ordinary meaning." Elekta Instrument S.A. v. O.U.R. Sci. Int'l, Inc., 214 F.3d 1302, 1307 (Fed. Cir. 2000). Judges may rely on dictionary definitions if not inconsistent with definitions found in or ascertained through a reading of the patent documents. Vitronics, 90 F.3d at 1584, n.6. A patentee, however, may choose to use a term in a manner other than its ordinary meaning, if it is "apparent from the patent and the prosecution history that the inventor used the term with a different meaning." Hoechst Celanese Corp. v. BP Chems. Ltd., 78 F.3d 1575, 1578 (Fed. Cir. 1996).

The court may also consult the patent specification; it includes a written description of the claimed invention that explains how to make or use it. 35 U.S.C. 112(a); C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 864 (Fed. Cir. 2004). The specification is particularly helpful in claim construction

8 - OPINION AND ORDER

because it describes the claims in context. Microsoft Corp. v. Multi-Tech Sys., Inc., 357 F.3d 1340, 1347-48 (Fed. Cir. 2004). Often, the specification "is the single best guide to the meaning of the disputed claim term." Vitronics, 90 F.3d at 1582. However, the court "must use the written description for enlightenment and not read a limitation from the specification." Playtex Prods., Inc. v. Procter & Gamble Co., 400 F.3d 901, 906 (Fed. Cir. 2005)

The prosecution history of a patent may be helpful as it is the record of exchange between the Patent and Trademark Office (PTO) and the patent applicant. Thus, it reflects the patent's pre-issuance history. Markman, 52 F.3d at 980. "The prosecution history gives insight into what the applicant originally claimed as the invention, and often what the applicant gave up in order to meet the [Patent] Examiner's objections." Lemelson v. General Mills, Inc., 968 F.2d 1202, 1206 (Fed. Cir. 1992); see also Middleton, Inc. v. Minn. Mining & Mfg. Co., 311 F.3d 1384, 1388 (Fed. Cir. 2002). If, after consideration of intrinsic evidence, genuine ambiguity remains as to the meaning of the claim language, the court may consult extrinsic evidence to aid in its construction of the claim language. Vitronics, 90 F.3d at 1583. Extrinsic evidence consists of all evidence external to the patent and file history, including inventor and expert testimony. Id. at 1584.

9 - OPINION AND ORDER

A. The '180 Patent

The '180 Patent, entitled "Laminated Glass and Windshield Repair Device" was issued on September 23, 1997. Randy L. Mackey and Robert A. Beveridge are named as the inventors of the '180 Patent, and Glas-Weld is named as the sole owner. The '180 Patent is generally directed to a glass repair device, comprising a resin injector with a plunger that engages and disengages a groove in the shaft of a piston. The disputed claim terms appear in Claim 1, as emphasized below:

1. A device for repairing cracks in laminated glass having convertibility between repairing sub-surface and surface cracks comprising:

a cylinder defining a dispensing mouth at an inner end, a cavity and an opening at an outer end defining a central bore;

a piston mounted for axial movement in the cavity of the cylinder including a seal portion forming a seal in the cavity and enabling the production of a vacuum when drawn outwardly through the cavity, a shaft portion extended through and fixed to the seal portion and movable toward the mouth, said shaft portion having a handle portion extended through the central bore and out of the cylinder opposite the mouth and exposed for manual manipulation;

a mounting member attachable to the cylinder and piston combination for mounting the cylinder and piston combination to a crack in the laminated glass; and

said shaft portion including a helical groove, said shaft portion extended through the central bore of the cylinder, said central bore sized to receive the shaft portion including the helical

<u>groove</u> to permit free sliding linear movement of the shaft portion through the central bore, and

a <u>plunger member</u> carried by the cylinder and <u>selectively laterally projectable</u> into and out of engagement with the <u>helical groove</u> of the shaft member whereby upon being projected into the groove, turning of the exposed handle portion forces movement of the shaft portion toward and away from the mouth of the cylinder and upon withdrawal of the plunger member said handle can be <u>linearly slidably forced</u> toward and away from the mouth of the cylinder.

Pl.'s Ex. A at 8 ('180 Patent, Col. 7-8).

## 1. Having Convertibility

The parties identify "having convertibility" as disputed claim language. Plaintiff contends that the phrase is part of the preamble to Claim 1, is not limiting, and requires no construction. See <u>Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.</u>, 289 F.3d 801, 808 (Fed. Cir. 2002) (A preamble generally limits the claimed invention if it "recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim.") (citation omitted). Alternatively, plaintiff argues that the phrase is intended to clarify the function of the plunger and should be construed as: "Capable of operating with the plunger engaged in the helical groove, or with the plunder retracted from the helical groove." Pl.'s Opening Cl. Constr. Brief at 11.

Michael Boyle argues that the phrase "having convertibility" was added to the preamble after the patent was

11 – OPINION AND ORDER

rejected initially by the PTO, and it thus gives meaning to the claim language. Further, Michael Boyle argues that the phrase must be construed to explain that the physical configuration of the device can be changed in accordance with the type of window repair performed. He proposes the following construction: "capable of being placed in more than one different physical configuration, said configurations operating different from one another in a way that is relevant to the type of crack being repaired." Def.'s Opening Cl. Constr. Brief at 9-10. Christopher Boyle proposes a construction similar to Michael Boyle's.

I generally agree with plaintiff that the phrase "having convertibility" clarifies the function of the plunger and does not necessarily impose independent limitations. Nonetheless, I find that the phrase gives meaning to the claim language, in that it makes clear that the form and function of the device can be changed to correspond with the particular type of window repair; i.e., the device can convert from one window repair configuration to the other. This clarification is important, as recognized by the applicant. See, e.g., Pl.'s Ex. D at 71; Bell Commc'n Research, Inc. v. Vitalink Commc'n Corp., 55 F.3d 615, 620 (Fed. Cir. 1995) ("[W]hen the claim drafter chooses to use both the preamble and the body to define the subject matter of the claimed invention, the invention so defined, and not some

other, is the one the patent protects."). Accordingly, I find that this term requires construction.

However, I do not adopt defendants' proposed construction or construe the term as it relates to plunger of the device. Rather, in accordance with the plain language of the preamble and the context of the claim language, "having convertibility" is construed as "having the capability to change form and/or function, so as to accommodate the repair of both sub-surface and surface window cracks."

### 2. Central Bore

Plaintiff contends that the phrase "central bore" does not require construction; alternatively, plaintiff argues that it should be construed as "the hollow portion of the cylinder, defined by the dispensing mouth, opening and cavity." Pl.'s Opening Brief at 13. Michael Boyle does not proffer a construction for this language while Christopher Boyle proffers the same construction as plaintiff, with the additional language of "having parallel walls." However, plaintiff is correct that the claim language does not reference parallel walls or include such a limitation. Given that a bore is commonly defined as the hollow part of a tube or cylinder, I adopt plaintiff's construction of "central bore," finding it consistent with the plain language and context of the phrase.

### 3. Mounting Member

Plaintiff contends that no construction is necessary for this phrase, or alternatively, that this phrase should be construed to mean "an attachable structure which facilities the mounting of the piston and cylinder combination to glass." Michael Boyle does not offer a construction, while Christopher Boyle offers a construction similar to plaintiff's, with the additional language of "suction cups" as part of the structure. Again, however, the claim language does not reference suction cups; merely because suction cups are shown as an embodiment does not render them a claim limitation. Liebel-Flarsheim v. Medrad, Inc., 358 F.3d 898, 913 (Fed. Cir. 2004) ("[I]t is improper to read limitations from a preferred embodiment described in the specification — even if it is the only embodiment — into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."). I find no clear indication that plaintiff intended suction cups to be a claim limitation. Therefore, I adopt plaintiff's proposed construction.

### 4. Helical Groove

Plaintiff argues that this phrase needs no construction, or that the court should construe the phrase to mean "spiral groove" in accordance with the plain meaning of the word helical. Michael Boyle contends that the phrase should be

14 – OPINION AND ORDER

construed as a "groove having uniform depth and contour and constant pitch." Def.'s Opening Brief at 12. Christopher Boyle likewise proffers a construction that defines a groove with a uniform pitch. Relying on the definition of "helix" and an embodiment including a screw thread, defendants argue that the spiral groove must be uniform to convey the support the purpose of the invention.

However, the claim language does not include the word "helix" or define a groove of constant pitch and contour. Accordingly, I construe the phrase consistent with the ordinary meaning of helical, as a "spiral groove."

5. Plunger Member

For this phrase, plaintiff proposes the following construction: "A structure that can be inserted and retracted from the helical groove." Pl.'s Response Brief at 18. Michael Boyle does not propose a construction for this claim term. Christopher Boyle contends that this phrase should be construed to mean "a device which has the manual capability to engage and disengage from the helical groove as the user's needs require." Plaintiff maintains that Christopher Boyle's proposed construction includes unnecessary terms – "manual" and "as the user's needs require" – unsupported by the claim language.

I agree that the proposed term "manual" is not supported by the claim language or the specification as a limitation; the

same is true for the phrase "as the users' needs require."
Simply put, the phrase "plunger member" refers to the part of
the device that can be inserted into or retracted from the
helical groove so as to engage the piston, and I construe the
phrase accordingly.

### 6. Selectively Laterally Projectable

The parties next dispute the construction of the phrase
"selectively laterally projectable" as it relates to the
plunger's engagement with the helical groove. Plaintiff argues
that the phrase should be construed to mean "capable of being
inserted and retracted from the helical groove." Christopher
Boyle proposes a similar construction: "Capable of being moved
in and out of the helical groove by the user in order to aide in
ease of repair of surface or subsurface cracks." Michael Boyle
argues that the language should be construed to highlight the
fact that the user can select the function of the plunger, as
follows: "[u]ser can select whether the plunger member engages
the helical groove or not, and can change the plunger's
engagement, without disassembling or destroying the device."

I decline to adopt either defendant's proposed
construction. The claim language does not describe how one would
use the device; rather, the language describes the function and
operation of the device. Further, though the purpose of the
device is window repair, I do not find that the claim language

16 — OPINION AND ORDER

requires the phrase "to aid in the ease of repair of surface or subsurface cracks."

Notably, the parties' proposed constructions ignore the term "laterally." Given the description of the device and the prosecution history, see Pl.'s Ex. D at 58, the term laterally must be given meaning. Generally, "laterally" means relating to the side or from the side, and this meaning is consistent with the specification. See Merriam-Webster Dictionary; Pl.'s Ex. A at 2-4 (Figs. 1-4, label 48). Therefore, I construe the phrase as follows: "Capable of being inserted in or retracted from the helical groove from the side."

### 6. Linearly Slidably Forced

Finally, the parties contest the construction of "linearly slidably forced" with respect to the handle of the plunger. Plaintiff proposes that the phrase be construed as "capable of being forced to slide in a linear direction." Michael Boyle offers no proposed construction, while Christopher Boyle contends that the phrase should be construed to mean "capable of being moved in a linear direction by the user without the need of rotational force." Essentially, the parties propose similar constructions, aside from Christopher Boyle's additional language of "without the need for rotational force." Again, the claim language does not describe how a user would operate the device. Accordingly, I construe the phrase in accordance with

17 – OPINION AND ORDER

its plain meaning: "Capable of being forced to slide in a straight line or linear direction."

B. The '372 Patent

The '372 Patent, entitled "Lamp System for Curing Resin in Glass" was issued on May 24, 2005. Defendant Michael Boyle and Randy L. Mackey are the named inventors of the '372 Patent, and Glas-Weld is named as the sole owner. The '372 Patent is generally directed to a lamp for curing resin during the repair of glass, and to a system for repairing glass, including a lamp and a resin injector. The disputed claim terms appear in Claims 1, 14, and 20:

> 1. A system for treating a break in glass comprising:
>
>> a resin injection system having laterally projected support legs, the outer extreme of which define a substantially annular shape, the support legs supporting the resin injection system in an operable position relative to the break; and
>>
>> a lamp system, the lamp system having a housing and a light source mounted inside the housing, the housing and the light source having a substantially annular shape,
>>
>> the lamp system mounted on the resin injection system whereby the light source defines a circular path within the annular shape of the support legs and the housing surrounding the support legs.

* * *

> 14. An apparatus comprising:
>
>> a light bulb, the light bulb having a substantially annular shape configured to accommodate a resin

18 - OPINION AND ORDER

injection system including a <u>support structure</u> having at least one radially projected support leg for supporting the system on a glass surface; and

a bulb housing having a substantially annular shape that substantially corresponds to the shape of the light bulb to facilitate accommodation of the light bulb within the bulb housing, and having an open bottom for projecting light onto said glass surface, and further having a top and a hole in the top, proximately at a center of the substantially annular shape of the bulb housing to facilitate operation of the injection system, said housing configured to accommodate the resin injection system, and the light bulb overlying[] at least one radially projected support leg of the support structure resulting in the annular light bulb having a relatively close diameter that is <u>radially inward</u> of the radial projection of [] at least one radially projected support leg.

\*\*\*

20. A system for treating a break in glass comprising:

a resin injection system;

a lamp system, the lamp system having a substantially annular shape configured to accommodate the resin injection system, said lamp system comprising:

a light bulb, the light bulb having a substantially annular shape, and configured to provide a predetermined type of light having a predetermined intensity value,

a bulb housing, the bulb housing having a substantially annular shape that substantially corresponds to the shape of the light bulb to facilitate accommodation of the light bulb within the bulb housing, and having a hole, proximately at a center of the substantially annular shape of the bulb housing, configured to accommodate a resin injection system;

19 — OPINION AND ORDER

a <u>connectable power cord</u>, the connectable power cord
having an integrated electrical power management
device to provide electrical power to the lamp
system from one or more types of electrical power
sources;

a handle coupled to the bulb housing, the handle
configured to receive the connectable power cord;

said bulb housing having <u>interlocking features</u> to
facilitate integration with a support structure
included in the resin injection system.

Pl.'s Ex. B at 6-8 ('372 Patent, Col. 6-10).

1. <u>Outer Extreme of Which Define a Substantially Annular
Shape</u>

Plaintiff contends that this phrase needs no construction

or alternatively, that it should be construed in accordance with

what plaintiff asserts is its plain meaning: "The ends shaped so

as to define a ring-like shape."

Michael Boyle argues that the phrase "outer extreme of

which define a substantially annular shape" – referring to the

support legs of the device – fails for indefiniteness under 35

U.S.C. § 112(b) ("The specification shall conclude with one or

more claims particularly pointing out and distinctly claiming

the subject matter which the inventor or a joint inventor

regards as the invention."). Specifically, Michael Boyle argues

that the "annular shape" defined by the support legs is the same

as "annulus" - a two-dimensional donut shape with two radial

measurements corresponding with the inner and outer circles of

the donut shape. Michael Boyle contends that the claim language describes only one circular border of the annulus, defined by the outer edges of the support legs, while no claim language defines the other, necessary border. Thus, Michael Boyle contends that the claim language is missing a key measurement of the shape set forth in the claim, rendering the claim language indefinite and invalid. Although Christopher Boyle does not allege indefiniteness, he contends that the annular shape must include inner and outer circular borders and the phrase should be construed accordingly.

"A claim is indefinite only when it is not amenable to construction or insolubly ambiguous." Teva Pharm. USA, Inc. v. Sandoz, Inc., 723 F.3d 1363, 1368 (Fed. Cir. 2013) (citation omitted). To prove indefiniteness, "[a]n accused infringer must [] demonstrate by clear and convincing evidence that one of ordinary skill in the relevant art could not discern the boundaries of the claim based on the claim language, the specification, the prosecution history, and the knowledge in the relevant art." Haemonetics Corp. v. Baxter Healthcare Corp., 607 F.3d 776, 783 (Fed. Cir. 2011).

Though the claim language is not a model of clarity, it is possible to discern the meaning of annular shape. As emphasized by plaintiff, the claim language refers to an annular shape, not an annulus. Further, the claim language does not describe inner

21 – OPINION AND ORDER

or outer circular borders but merely refers to the substantially "annular shape" bounded by the ends of the support legs. Further, the plain meaning of annular is ring-like or circular; it does not mean a donut shape formed by an inner and outer circle with two radial measurements. The plain meaning of the claim language provides that the ends of the support legs define or demarcate an annular, or circular, shape.

In sum, I find that this phrase is amenable to construction and means that the outer edges or ends of the support legs define a ring-like or circular shape. Accordingly, the phrase is construed to mean "the outer ends of the support legs are shaped to define a ring-like or circular shape."

## 2. Operable Position

Plaintiff and Christopher Boyle dispute the meaning of the phrase "operable position" with respect to the resin injection system. Plaintiff argues that this phrase needs no construction, or alternatively, that it should be construed to mean "a position such that the system can be used to repair glass." Christopher Boyle proffers a similar construction, though he maintains that the construction should reference the "optimal position" to repair "laminated glass." I do not find Christopher Boyle's construction supported by the claim language. The language merely states that the resin injection system is supported in an operable position; whether such position is the

22 — OPINION AND ORDER

"optimal" or best position for repairing glass is not implied or suggested by the claim language or its context. Likewise, the repair system is not limited to "laminated" glass, and that term is not referenced in the claim language or the specification.

Accordingly, I adopt plaintiff's proposed construction for this phrase.

### 3. Housing

Plaintiff and Christopher Boyle propose identical constructions for this term, and Michael Boyle does not propose one. Therefore, I adopt the proposed construction of housing as "a structure that covers and/or protects the light source/bulb," finding this construction consistent with the plain meaning of the term and the context of the claim language.

### 4. Mounted On

Plaintiff contends that this phrase should be construed to mean "placed on, set on, attach to or fixed to." Michael Boyle originally proffered a construction of "in physical contact with and supported by." In his claim construction brief, however, Michael Boyle concedes that plaintiff's construction is proper, and Christopher Boyle does not dispute the construction of this term. Therefore, I adopt plaintiff's construction of this term to mean "placed on, set on, attached to or fixed to."

///

///

23 - OPINION AND ORDER

5. Surrounding

Plaintiff    and    Christopher    Boyle    offer    competing constructions for this term, which is used to describe the "housing surrounding the support legs." Plaintiff proposes a construction of "substantially encompassing" while Christopher Boyle proposes "a complete perimeter."

The plain meaning of surround is to enclose or encircle on all sides. Further, this construction is supported by the claim language, the specification, and the preferred embodiment, which shows the housing enclosing and encircling the support legs. See Pl.'s Ex. B at 2 (Figs. 1A, 1B). Therefore, surrounding is construed to mean "enclosing or encircling the support legs."

6. Support Structure

Plaintiff and Christopher Boyle dispute the meaning of this phrase, which in context refers to a "support structure having at least one radially projected support leg for supporting the system on a glass surface."

Plaintiff    contends    that    this    phrase    requires    no construction, or alternatively that it means "a structure which supports the resin injection system." Christopher Boyle proposes that the term be construed as "a structure including the suction[] cups which facilitates the mounting of the piston and cylinder combination to glass." However, the claim language does not include the limitation of suction cups; rather the claim

24 – OPINION AND ORDER

language refers only to a support structure with at least one
support leg. Likewise, the patent specification does not
reference suction cups; it merely refers to a "support structure
of the resin injection system (i.e., the supports legs)." '372
Patent, Col. 5, lines 62-63.

Therefore, I adopt the construction proposed by plaintiff,
consistent with the plain meaning of the phrase.

7. Radially Inward

Plaintiff maintains that this phrase means "closer to the
center than." Christopher Boyle argues that this phrase is a
"non sequitur" and that all claims containing the phrase should
be deemed void. Presumably, Christopher Boyle argues that the
phrase is indefinite.

As stated above, a court should find a claim term
indefinite only if the term is unamenable to construction. Here,
I find that the phrase is capable of construction, despite the
unartful language of the claim and the redundancy of the terms
"radial" and "radially." In context, the claim language means
that the diameter of the light bulb does not extend beyond
(i.e., is "radially inward of") the end of at least one support
leg. See Pl.'s Ex. B at 2-3 (Figs. 1B, 2).

However, I find no claim language that supports plaintiff's
proposed construction defining the light bulb's diameter as
closer to the center of the support structure than the ends of

25 - OPINION AND ORDER

the support legs. The claim language does not indicate the proximity of the light bulb to the ends of the support legs; it merely provides that the light bulb is "radially inward" of the ends of the support legs. Likewise, the patent specification states that the "annular portion" of the light bulb "provides light in all directions . . . and defines a circular path within the annular shape of the support legs," without reference to the proximity of the light bulb to the ends of the support legs. '372 Patent, Col. 5, lines 25-29. Aside from expert testimony, extrinsic evidence I do not consider given the claim language, plaintiff provides no basis for this proposed construction. See SkinMedica, Inc. v. Histogen Inc., 727 F.3d 1187, 1195 (9th Cir. 2013) ("Expert testimony, in particular" is less reliable than the patent and its prosecution history in determining how to read claim terms, "because it is generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence.") (citations omitted).

Accordingly, I construe the phrase radially inward as "within" or "inside of."

8. Connectable Power Cord

Plaintiff argues that this phrase should be construed to mean "a power cord capable of connecting to a power source." Defendants maintain that the claim language refers to a power cord that can be connected or disconnected to the handle of the

26 - OPINION AND ORDER

device. Plaintiff relies on the reference to "couplers" in the specification; plaintiff contends that the claim term "'couple' refers to the electrical contact between the handle and the power cord and 'connectable' must therefore refer to the electrical contact between the power cord and the power source." Pl.'s Opening Br. at 34.

However, the claim language and the patent specification refute plaintiff's proposed construction. The claim language refers to a "connectable power cord having an integrated electrical power management device to provide electrical power to the lamp system *from one or more types of electrical power sources*," with "the handle configured to *receive* the connectable power cord." '372 Patent, Col. 8, lines 48-53 (emphasis added). The claim language and its context clearly describe a device designed to accommodate interchangeable power cords that connect at the handle; otherwise, the handle would not be configured to "receive" the power cord.

The patent specification also supports this construction:

> For example, a connectable power cord may have an integrated electrical power management device to provide electrical power to the bulb housing from a battery, while *another* connectable power cord may have an integrated electrical power management device to provide electrical power to the bulb housing from a wall outlet. Both connectable power cords may have substantially similar electrical power couplers such as the electrical power coupler of FIGS. A-B, thereby facilitating use of the bulb housing with *two different connectable power cords* (i.e., connectable

27 - OPINION AND ORDER

power cords for two different electrical power
sources).

'379 Patent, Col. 4, lines 18-29 (emphasis added). Thus, like
the claim language, the patent specification refers to power
cords connectable to the handle of the device, to allow the
device to obtain electrical power from different sources through
the use of different power cords. Plaintiff's construction
ignores the context of the phrase, and a patentee "is not
entitled to a claim construction divorced from the context of
the written description and prosecution history." Nystrom v.
Trex Co., Inc., 424 F.3d 1136, 1144-45 (Fed. Cir. 2005).

Moreover, plaintiff's proposed construction would render
the term "connectable" superfluous. See Merck & Co. v. Teva
Pharms. USA, Inc., 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A
claim construction that gives meaning to all the terms of the
claim is preferred over one that does not do so."); Power Mosfet
Techs., L.L.C. v. Siemens AG, 378 F.3d 1396, 1410 (Fed. Cir.
2004) (explaining that a claim construction which renders claim
terms superfluous is generally disfavored). A power cord must
necessarily connect to an electrical power source to obtain
electricity; if the power cord was "connectable" only to a power
source and not the device itself, the claim language would not
require this term. Furthermore, the handle would not be

configured to "receive" the "connectable" power cord if the cord was not intended to connect and disconnect from the handle.

In sum, I find that the phrase "connectable power cord" means "a power cord that can be connected to and detached from the handle."

### 9. Interlocking Features

Finally, the parties propose competing constructions for the phrase "interlocking features." This phrase refers to the bulb housing's "integration" with "a support structure included in the resin injection system." '372 Patent, Col. 8, lines 54-56. To facilitate such integration, the bulb housing has "interlocking features."

Plaintiff argues that the phrase requires no construction because the words are used in accordance with their plain language. Alternatively, plaintiff argues that this phrase should be construed as "features that interact with the resin injection system such that the movement of the resin injection system relative to the bulb housing is constrained by these features." Michael Boyle argues that the phrase means "features engage with each other by overlapping or by the fitting together of projections and recesses." Christopher Boyle maintains that the phrase does not require a construction; alternatively, he proposes a construction of "features having the ability to lock together with other components in all directions."

29 - OPINION AND ORDER

I tend to agree with plaintiff and Christopher Boyle that this phrase generally does not require construction. The context of the phrase is not particular to the device or its purpose, unlike many of the other phrases disputed by the parties. Nonetheless, the parties propose constructions that are not necessarily consistent with the plain meaning of this phrase.

As set forth in the claim language, interlocking simply means connecting to or locking with the support system. Thus, I construe this phrase to mean "features connecting to or locking together with the support structure of the resin injection system."

The court will employ the above construction of claims in resolving plaintiff's claims of infringement.

<u>MOTION FOR PARTIAL SUMMARY JUDGMENT AND RULE 56 NOTICE</u>

Plaintiff moved for partial summary judgment regarding infringement, and the court stayed the motion pending the construction of claims. Given that plaintiff's arguments necessarily relied on its claim construction, plaintiff is afforded the opportunity to supplement its motion in accordance with the court's claim construction. The court also indicated that it would allow limited discovery as necessary to support or oppose the motion for partial summary judgment in light of the court's construction of claims. In other words, the court will allow discovery regarding an issue of fact or law affected by

30 - OPINION AND ORDER

the construction of claims. No other discovery shall be allowed. Any additional discovery shall be completed within 30 days; if disputes arise, the parties shall confer and file a joint discovery report briefly describing the nature of the dispute and the court will consider the dispute on an expedited basis.

Finally, before a court may consider a summary judgment motion against a pro se litigant, the court must issue the appropriate notice. Accordingly, defendants are advised of the following rules regarding plaintiff's motion for partial summary judgment.

### NOTICE TO DEFENDANTS - WARNING

#### *This Notice Must be Given to You by the Court*

A motion for summary judgment filed under Rule 56 of the Federal Rules of Civil Procedure will, if granted against you, result in a judgment in plaintiff's favor with respect to the claims and issues identified in plaintiff's motion.

Rule 56 tells you what you must do in order to seek or oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact, and application of law will resolve the case. In other words, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will result in judgment being entered against you.

31 - OPINION AND ORDER

Plaintiff has set forth its version of undisputed facts in a supporting memorandum and other documents. In response to plaintiff's motion, you cannot simply rely on what your answer says. Instead, you must set forth specific facts contained in declarations, depositions, answers to interrogatories, or authenticated documents that contradict the facts set forth by plaintiff and establish a genuine issue of material fact for trial. You are advised that plaintiff's undisputed facts set forth in its supporting documents will be deemed admitted unless specifically denied or otherwise controverted by you and the evidence you cite in support.

Defendants should consider this Rule 56 notice when supplementing their opposition to plaintiff's motion for partial summary judgment.

<u>CONCLUSION</u>

Plaintiff's Motion for Default Judgment (doc. 133) is DENIED. However, defendants may not rely on evidence or affirmative defenses that were the subject of discovery requests to which they failed to respond. Further, within 30 days from this Opinion and Order, defendants shall provide the discovery information described by the court on page 6 and shall supplement their discovery responses regarding non-infringement, taking into consideration the court's claim construction.

Failure to do so will result in the imposition of monetary sanctions.

In light of the court's construction of claims set forth above, plaintiff may supplement its motion for partial summary judgment within 60 days from the date of this Opinion and Order. Defendants shall respond to any supplemental briefing within 21 days thereafter. Plaintiff may file an optional, supplemental reply within 14 days after defendants' supplemental response(s).

The parties are also ordered to confer regarding the possibility of settlement and provide a Joint Alternate Dispute Resolution Report within 14 days from the date of this Opinion and Order. If the parties are amendable to further attempts at judicial settlement, the court shall facilitate such efforts.

IT IS SO ORDERED.

Dated this 7th day of November, 2014.

_____
Ann Aiken
United States District Judge