IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GLAS-WELD SYSTEMS, INC., an
Oregon Corporation,

        Plaintiff,

  v.

MICHAEL P. BOYLE, dba SURFACE
DYNAMIX and CHRISTOPHER BOYLE,

        Defendants.

Civ. No. 6:12-cv-02273-AA

ORDER

AIKEN, Chief Judge:

    Plaintiff Glas-Weld Systems, Inc., brings patent infringement and trade secret claims against defendants Michael P. Boyle, dba Surface Dynamix, and Christopher Boyle pursuant to 35 U.S.C. § 271 et seq and Oregon law. Currently before the court are plaintiff's motion to show cause why default judgment should not be entered, as well as defendant's motion to dismiss for failure to comply with federal discovery rules. Plaintiff's motion for default judgment is

1 - ORDER

denied at this time, though the court orders sanctions against defendants in the form of attorney's fees. Defendants' motion is denied.

The lengthy and convoluted procedural history of this case and the parties' disputes are well-documented by plaintiff's filings and the docket of record. Put simply, defendants repeatedly have failed to comply with plaintiff's discovery requests, deadlines, and court orders, requiring otherwise unwarranted judicial intervention. See, e.g., docs. 51, 63, 174, 186, 199. For example, Michael Boyle has represented that he will provide certain documents or information - such as expert reports - by a certain date, only to renege at the last minute for questionable and unsubstantiated reasons. See doc. 186-3, Ex. C at 1; 186-18, Ex. R. Further, despite repeated warnings and admonishment from the court, defendants continue to communicate with plaintiff's counsel in an unnecessarily argumentative and unprofessional manner. See, e.g., doc. 186, Exs. I, O-P, U.[1]

Because of their pro se status and the hope that the parties could move this case toward resolution, the court has tolerated defendants' conduct to an extent. However, the court has grown increasingly weary of defendants' conduct and their failure to

---

[1] The court notes that such treatment is not reserved for plaintiff's counsel; Michael Boyle's demanding and demeaning treatment of appointed pro bono counsel resulted in the withdrawal of such counsel earlier in this case.

2 - ORDER

abide by the relevant deadlines and the court's discovery orders. Recently, after defendants repeatedly failed to provide expert reports requested by plaintiff and ordered by the court, the court ordered defendants to produce them by May 1, 2015. Doc. 188. The court warned defendants that failure to do so could result in sanctions, including default judgment against them. Defendants, unsurprisingly, missed the deadline and apparently provided the expert reports (with notable deficiencies) two to three days afterward. Prior to May 1, 2015, defendants made no effort to contact the court or plaintiff's counsel to explain the delay or otherwise seek leave for the late production.

Instead, on May 4, 2015, Michael Boyle filed a submission in an attempt to explain and excuse the delay. Michael Boyle represented that "[e]xtenuating health problems" left him unable to provide the expert reports by May 1, 2015, in that he was "affect[ed] by a life threatening illness" that required transportation by ambulance from a health clinic in Sisters, Oregon, to St. Charles Medical Center in Bend for hospitalization. Doc. 191. Michael Boyle also claimed that plaintiff made "false" accusations about his alleged attempt to harass an employee of plaintiff, which drove Michael Boyle into a "dangerous depressed mood." Doc. 191.[2] According to Michael Boyle, "the following

---

[2]The parties vigorously dispute the nature of the alleged incident between plaintiff and an elder at Randy Mackey's place of worship. The court has reviewed the relevant declaration. Doc.

3 - ORDER

Monday" - April 27, 2015 - he informed his son, defendant Christopher Boyle, that he was suicidal. Christopher Boyle allegedly called 911 and the Deschutes County Sheriff's office conducted a search for Michael Boyle and eventually contacted and interviewed him. Doc. 191.

Christopher Boyle also filed a submission on May 4, 2011, in response to plaintiff's motion to show cause. While referencing Michael Boyle's hospital admittance, he quite notably omitted any reference to Michael Boyle's threat of suicide, a 911 call, or a search by the Sheriff's Office. Doc. 193. Given the discrepancy and defendants' history of behavior in this case, the court ordered defendants to provide documentation to support their representations regarding Michael Boyle's medical emergency and the search by the Sheriff's Office.

Michael Boyle complied with the court's order, in part, and provided a discharge summary from St. Charles Health Systems.[3] Michael Boyle did not submit documentation regarding the ambulance or his condition upon admittance.

---

201. given his description of the event in question, Michael Boyle's conduct, though inappropriate and unprofessional, does not warrant imposition of default judgment. Defendants are advised that it is impermissible to contact plaintiff's employees or representatives, other than through plaintiff's counsel.

[3]Michael Boyle submitted this report ex parte; because of the personal nature of the report and the fact that such information is not otherwise relevant to plaintiff's claims, it was allowed.

4 - ORDER

The discharge report reflects that Michael Boyle was treated for a bleeding ulcer from April 21 to 23, 2015. Notably, the court issued the order to produce expert reports on April 28, 2015, several days after Michael Boyle was discharged. Neither Michael Boyle nor Christopher Boyle contacted to court about Michael Boyle's medical condition, even though the court had ordered defendants to do so in a prior order. Regardless, Michael Boyle was discharged with few restrictions; even if his medical condition prevented him from producing the expert reports in a timely manner, Christopher Boyle certainly could have done so.

More troubling is Michael Boyle's representation to the court about a search for him by the Sheriff's Office on April 27, 2015, the day before the court issued its order. As mentioned, Christopher Boyle did not mention this event in his submission to the court. Doc. 193. Further, despite being ordered to do so, Michael Boyle never provided the Sheriff's Office report regarding the alleged incident. Michael Boyle first informed the court that he was in the process of obtaining it; then, Michael Boyle informed the court that the report cost twenty dollars and he did not order the report due to a ten-day delay. Instead, Michael Boyle provided contact information for the Sheriff's Office. Doc. 197.

However, plaintiff contacted the Deschutes County Sheriff's Office and was informed that a 911 incident report was filed regarding the Boyles on April 20, 2105, contrary to Michael Boyle's

5 - ORDER

assertion that the incident occurred on April 27, 2015. Further, plaintiff was informed that a report for the incident could be obtained in a week for a five-dollar fee. Doc. 200. When ordered to explain the failure to provide the Sheriff's report and explain the discrepancy, Michael Boyle filed another ex parte response and stated that his depression and anxiety caused him to confuse the dates of the event. The court fails to understand how that is possible, given the very short time frame involved. While the court empathizes with those who suffer from depression, lying to the court is inexcusable and will not be tolerated. The court thus finds that sanctions are warranted for defendants' failure to abide with a court order and Michael Boyle's untruthfulness. The remaining question is the nature of the sanction - whether the court should grant plaintiff's motion for default judgment or issue a lesser sanction.

"A terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe." Conn. General Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007). "Only 'willfulness, bad faith, and fault' justify terminating sanctions." Id. (quoting Jorgensen v. Cassiday, 320 F.3d 906, 912 (9th Cir. 2003)). The Ninth Circuit has developed a five-part test to determine whether a case-dispositive sanction is warranted:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets;

> (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. The sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions. This "test" is not mechanical. It provides the district court with a way to think about what to do, not a set of conditions precedent for sanctions or a script that the district court must follow[.]

Id. (citations omitted). I find that the application of these factors generally support the entry of default judgment against the defendants in this case.

With respect to the first two factors, this case has been pending since 2012; it is now 2015. Much of the delay arises from defendants' pro se status, the hostility between plaintiff's counsel and defendants, and the repeated discovery disputes between the parties, most often as a result of defendants' failure to provide requested information. Given that a motion for summary judgment remains pending and is dependent on further discovery and depositions, it is unclear when and if this case will ever resolve. Further, this case has required numerous instances of unnecessary court intervention and will likely require additional intervention in the future. Therefore, the interests of expeditious resolution of litigation and the court's need to manage its dockets weigh in favor of default judgment.

Further, as this case unnecessarily extends, plaintiff will continue to be prejudiced in terms of pursuing its claim and

expending additional resources. Thus, this factor also weighs in favor of default judgment. The fourth factor necessarily weighs against default, which leaves the fifth factor.

The court has considered lesser sanctions, though it has not imposed them. The court has also warned defendants that sanctions, including default may be imposed. The court's warnings have not deterred defendants' conduct and lack of compliance, however. Indeed, during the pendency of plaintiff's motion for default, defendants have again filed a meritless motion, as discussed below. Furthermore, after failing to comply with court's order to produce expert reports, Michael Boyle was untruthful with the court.

"In deciding whether to impose case-dispositive sanctions, the most critical factor is not merely delay or docket management concerns, but truth." Conn. General Life Ins. Co., 482 F.3d at 1097. "What is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations threaten to interfere with the rightful decision of the case." Id. (internal quotation marks and citation omitted). The same principal should apply to non-discovery instances of untruthful conduct, particularly when such conduct is directed at the court. Here, defendants' conduct "threaten[s] to interfere with the rightful decision of the case," in that the court cannot rely on Michael Boyle's representations to this court or to plaintiff. Id. Further, given Michael Boyle's conduct in this

8 - ORDER

case thus far, it is unlikely that his behavior will change. "It is appropriate to reject lesser sanctions where the court anticipates continued deceptive misconduct." Anheuser-Busch, Inc. v. Nat. Reverage Distribs., 69 F.3d 337, 352 (9th Cir. 1995).

However, the court is faced with a dilemma. The court cannot find that Christopher Boyle was untruthful in his submission to the court on May 4, 2015. Further, several court orders addressed and mailed to Christopher Boyle were returned "undeliverable." See, e.g., docs. 195, 211. While Christopher Boyle should provide updated information about his address, the court cannot be certain Christopher Boyle received notice of several court orders.[4] Granted, at some point Christopher Boyle must have been notified of the court's order on April 28, as he submitted an explanation for defendants' failure to comply with that order. At the same time, the record does not establish that he had notice of additional orders. As a result, the court is not inclined to grant default judgment against Christopher Boyle. Further, given the nature of this case, it would be inappropriate and unwise to enter default against only one defendant. Therefore, default judgment will not be entered at this time.

Nonetheless, the fact remains that defendants failed to comply

---

[4]The address of record of Christopher Boyle has since been changed to: 66932 Sagebrush Lane, Bend, Oregon 97701. If this address is not accurate, either Michael Boyle or Christopher Boyle shall notify the court immediately.

9 - ORDER

with the court's order of April 28 after being warned of sanctions for non-compliance, and Michael Boyle submitted untruthful information in response to the court's inquiries.[5] Defendants also continue to communicate with plaintiff's counsel in an unprofessional manner, which includes sarcasm, insults and name-calling. See, e.g., doc. 186-21, Ex. U. These actions warrant the imposition of sanctions against defendants. Specifically, defendants shall pay plaintiff's attorney fees incurred in attempting to obtain defendants' expert reports from April 6, 2015 through May 4, 2015. Further, defendants shall pay plaintiff's attorney fees incurred in moving for default judgment and for continuance of depositions.

Finally, the court considers defendants' "emergency" motion to dismiss for plaintiff's alleged failure to comply with their discovery requests. I note that defendants filed this motion after the court ordered them - again - to show cause why default judgment should not be entered for repeatedly failing to comply with court orders. Regardless, defendants' motion is without merit.

---

[5] Plaintiff also contends that defendants failed to comply with the court's order of May 26, 2015, requiring defendants to produce additional information about their experts and explain inconsistent responses. Plaintiff contends that the expert reports remain deficient and the information provided "highly suspect." Doc. 213 at 3. Plaintiff may very well be correct that the information is insufficient; however, I do not find default judgment warranted on that ground. If defendants' expert reports are deficient, plaintiff can rely on that fact in support of its motion for summary judgment. Defendants will be ordered to provide a resume or CV for Bob Simoni.

10 - ORDER

Defendants complain that plaintiff has failed to comply with their discovery requests and seeks dismissal as a sanction. Of course, dismissal would be inappropriate for one discovery failure. Regardless, plaintiff has not failed to provide defendants with the requested information. Defendants sought plaintiff's damages calculations, which plaintiff's provided in an email (which, contrary to defendants' allegations, was attached to its response). See doc. 190-11. Defendants nonetheless contend that plaintiff fails to provide "expert analysis" for its damages calculations. However, plaintiff is not required to do so. If, at trial, defendants believe that plaintiff's damages analysis requires expert opinion or is unsupported by the documents, they can make that argument. For purposes of discovery, plaintiff has provided the information requested by defendants. Further, it is the court's understanding that plaintiff's damages calculations is based on information provided by defendants; thus, defendants possess the documents relied on by plaintiff. If the court's understanding is incorrect, plaintiff shall provide any unprivileged documents, to the extent they exist, that support their damages calculations.

Defendants next argue that plaintiff failed to disclose an insurance abatement policy in response to its requests for production of "Documents reflecting or evidencing insurance policies that will or might defend and/or indemnify any party to this litigation, for events, occurrences, acts and/or omissions

11 - ORDER

associated with any allegation set forth in any pleading filed in this case." Doc. 210-2. However, an insurance abatement policy is not an indemnity policy. Moreover, as plaintiff correctly points out, defendants have not asserted claims against plaintiff that would trigger an indemnity insurance policy. Finally, defendants did not request a copy of the insurance abatement policy (and even if they did, it is not relevant and not subject to production). Therefore, this argument is meritless.

In light of the fact that the court denied a previous motion by defendants asserting similar arguments, defendants are ordered to pay the attorney fees incurred by plaintiff in responding to this motion.

## CONCLUSION

Plaintiff's Motion for Show Cause Why Default Judgment Should Not Be Entered (doc. 186) is DENIED in part, and defendants' Motion to Dismiss (doc. 210) is DENIED. The court does not order default judgment at this time. Rather, defendants shall pay the attorney fees incurred by plaintiff in seeking to obtain the expert reports during the time period from April 6, 2015 through May 4, 2015; filing the motion for order to show cause (doc. 186) and supporting reply (doc. 202); the motion to continue depositions (doc. 199); and the response in opposition to defendants' emergency motion to dismiss (doc. 214). Plaintiff shall submit an affidavit of fees and supporting documentation within twenty-on (21) days from the date of this order.

12 - ORDER

Now that plaintiff has received defendants' expert reports, the parties shall confer and contact Paul Bruch at 541-431-4111 to schedule a date and time for previously-noted depositions to occur at the Eugene Federal Courthouse. The parties may also choose to forego depositions and proceed with supplemental briefing on plaintiff's pending motion for partial summary judgment.

Defendants are advised that plaintiff, its employees, and its representatives are represented by counsel, and any communication from defendants must be made through plaintiff's counsel. Any attempt by defendants to contact plaintiff's employees or representatives directly - whether in person, by telephone, or by email - is not permitted.

**<u>Defendants are advised that the failure to comply with this order or any future order shall result in an order to show cause why default judgment should not be entered against them.</u>**

IT IS SO ORDERED.

Dated this 30th day of July, 2015.

_____
Ann Aiken
United States District Judge

13 - ORDER